UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **In re:** | Case No. 14-30027 |
| Charles and Tina Palmer, | Adversary Case No. 14-3032 |
| **Debtors,** | Judge John P. Gustafson |
| JOSEPH ABRAHAM, et al. | **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| **Plaintiffs,** | |
| Vs. | Deborah Spychalski (0061986) |
| CHARLES PALMER | PO Box 711 |
| | 500 Madison Avenue, Suite 525 |
| **Defendant.** | Toledo, Ohio 43697 |
| | (419) 243-9424 |
| | (419) 244-0454 (Fax) |
| | Dk_spychalski@yahoo.com |
| | Attorney for Plaintiffs |

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Now come Plaintiffs, Joseph and Sue Abraham, and pursuant to Fed. R. Civ. P. 56, move this court for Summary Judgment in their favor. A Memorandum in Support of this Motion immediately follows.

MEMORANDUM IN SUPPORT

1.  INTRODUCTION

The Complaint alleges that the debt which arises from the damages for the willful and malicious injury resulting from the incidents as set forth in Complaint are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(6). Count I claims defamation, Count II claims false light invasion of privacy, Count III claims intentional infliction and reckless infliction of emotional distress and the last Count IV is for attorney fees.

This case was set for trial in Ottawa County Court of Common Pleas, Case No. 11CV392C and immediately before trial the Defendant filed this Chapter 7 Bankruptcy case .

The Plaintiffs' Complaint alleges that on July 20, 2010, during an Allen Township Zoning Board Public Hearing, held at 21030 West Toledo Street, Williston, Ohio, defendant in the presence and hearing of Gary Kapp, Barry Stewart, Becky Sparks, Gary Baker, Nancy Sabin, Ed Bowlander, and about fifteen other persons, said that the Plaintiffs physically tried to run his son and wife over and that they (defendant and his son and wife) have charges filed against them (plaintiffs), and that Plaintiff Joseph Abraham assaulted his neighbors and made threats at them (defendant and defendant's son and wife). A transcript of the Allen Township Zoning Board Public Hearing is identified as Transcript of Proceedings, by Veronica Williams of Collins Reporting Service, Inc. at page 56 and attached as Plaintiff's Exhibit A.

2. UNDISPUTED FACTS

Undisputed relevant facts in this case include the following:

-on July 20, 2010, Defendant and Plaintiffs attended the Allen Township Zoning Board Public Hearing, held at 21030 West Toledo Street, Williston, Ohio. (Exhibit B-Deposition of Charles Palmer, pg. 30.) [1]

-A court reporter was present and prepared a transcript of the July 20, 2010, Allen Township Zoning Board Public Hearing. (Exhibit A-Transcript of Proceedings, by Veronica Williams of Collins Reporting Service, Inc.). [2]

---

[1] The relevant pages of the deposition transcript of Charles Palmer is being filed with the Court as Plaintiffs' Exhibit B.
[2] The relevant pages of the transcript of proceedings of the July 20, 2010 Allen Township Zoning Board Public Hearing is being filed with the Court and identified as Plaintiffs' Exhibit A.

14-03032-jpg    Doc 18    FILED 08/28/14    ENTERED 08/28/14 14:22:46    Page 2 of 13

- Plaintiffs are married to each other.

- Defendant, Charles Palmer is married to Tina Palmer. (Exhibit B-Deposition of Charles Palmer, pg. 3). They have a son, Collin Palmer. (Exhibit C-Deposition of Collin Palmer, pg 3-4).[3]

- At the July 20, 2010 Allen Township Zoning Board Public Hearing, defendant said the following in the presence and hearing of Gary Kapp, Barry Stewart, Becky Sparks, Gary Baker, Nancy Sabin, Ed Bowlander, and about fifteen other persons:

> "[W]e've had multiple issues with the Abrahams and they physically tried to run my son and wife over, and we have charges filed against them…
> He [Joseph Abraham] assaulted our neighbors, has made threats at us."

(Transcript of Proceedings, by Veronica Williams of Collins Reporting Service, Inc., page 2, 56; Deposition of Tina Palmer, Plaintiff's Exhibit D- Deposition of Tina Palmer, pg. 54-55 and roster of attendees attached to Deposition).

- Plaintiffs were seen as an obstacle by the Defendant for approval by the Allen Township Zoning Board for a temporary usage permit to be able to operate a business out of the home residence. (Exhibit B-Deposition of Charles Palmer, pg 30-32.)

- Defendant's wife filed a police report on 7-13-10. (Exhibit E) which did not result in any type of prosecution. (Exhibit B-Deposition of Charles Palmer, pg. 46.)

- Defendant testified in his deposition that he is not aware of Sue Abraham ever trying to run his son over or ever trying to run his wife over. (Exhibit B-Deposition of Charles Palmer, pg. 4, 44-45). Defendant also testified that he never filed any charges against Sue Abraham. (Exhibit B-Deposition of Charles Palmer, pg. 4). Defendant also testified, in response to the question regarding Mr. Abraham, "[w]hat does that have to do

---

[3] The relevant pages of deposition transcript of Collin Palmer is being filed with the Court and identified as Plaintiffs' Exhibit C.

14-03032-jpg   Doc 18   FILED 08/28/14   ENTERED 08/28/14 14:22:46   Page 3 of 13

with trying to run her [Mrs. Palmer] over?" In response, he testified that his wife told him that "he [the Plaintiff] had backed out in front of her and blocked the road and she almost hit him so, yes, that was my interpretation of it." (Exhibit B-Deposition of Charles Palmer, pg. 6-7.) Defendant was also asked, "[d]id Joe Abraham ever assault any of your neighbors?" In response, Defendant states, "…I guess a verbal assault would be what I would say…". (Exhibit B-Deposition of Charles Palmer, pg. 8-9.) Further, in response to the question, "[h]ave you ever seen Joe Abraham assault any of your neighbors?", his response was, "I personally have not seen him assault them, no." (Exhibit B-Deposition of Charles Palmer, pg. 10.)

-Defendant's wife, Tina Palmer, testified in her deposition that neither Joseph Abraham nor Sue Abraham ever tried to run her over. (Exhibit D-Deposition of Tina Palmer, pg. 5). Tina Palmer also testified that she never filed any charges against Sue Abraham. (Exhibit D-Deposition of Tina Palmer, pg. 5). Tina Palmer also testified that Joe Abraham never tried to run her over. (Exhibit D-Deposition of Tina Palmer, pg. 5).

-Defendant's son, Collin Palmer, testified in his deposition that Sue Abraham never tried to run him over. (Exhibit C-Deposition of Collin Palmer, pg. 5). Collin Palmer also testified that he never filed any charges against Sue Abraham. (Exhibit C-Deposition of Collin Palmer, pg 6). Collin Palmer stated in his deposition that Joseph Abraham was already engaged in *backing out of his driveway* when he noticed Collin. Collin also drew a diagram of the incident. (Exhibit C-Deposition of Collin Palmer, pg 28 and diagram.) Collin testified on January 24, 2011, at a CPO hearing, that Joe Abraham was *backing into his driveway* and then pulled forward onto the street which is when Collin passed the Abraham house near the ditch on his dirtbike. (Exhibit F-Transcript of

4

Ottawa County Court Case No. 10CV581H, Hearing on Civil Protection Orders, Day 2 of 3, Testimony of Collin Palmer, pg 464-465.) Two conflicting statements about one alleged event.

3.   LEGAL ANALYSIS

PRELIMINARY LEGAL ISSUES

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157, 1334 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(I). The non-dischargeability claim is pursuant to 11 U.S.C. §§ 523(a)(6).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. In deciding the motion, a Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita elec. Indus. Co. v Zenith Radio Corp.,* 475 U.S. 574 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v First Am. Bank,* 9116 F. 2d 337 (6th Cir. 1990).

In the case at bar, all of the operative facts have already been fully disclosed in deposition and transcripts indicating clear and convincing evidence in favor of the Plaintiffs herein.

DEFAMATION

Defamation is a false, defamatory statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's

5

profession. *A & B-Abell Elevator co., Inc. v Columbus/Central Ohio Bldg. & constr. Trades Council, 73 Ohio St. 3d 1,7 (1995).* Judge Kurfess in *Fisher v. Marek*, Ottawa County Common Pleas Court Case No. 10CV340C Decision and Judgment Entry, attached as Exhibit G, defines defamation very clearly.

> There are two kinds of defamation. Defamation *per se* occurs when material is defamatory on its face; defamation *per quod* occurs when material is defamatory through interpretation or innuendo. *Becker v Toulmin* (1956), 165 Ohio St. 549. Defamation *per se* means that the defamation is accomplished by the very words spoken. *McCarney v Oblates of St. Francis deSales*, (1992), 80 Ohio App. 3d 345. In order for a statement to be defamatory *per se*, it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injury one in his trade or occupation. *Id.* With defamation *per se*, damages and actual malice are presumed; with defamation *per quod*, the plaintiff must plead and prove special damages resulting from the defamatory statements. *Kanjuka v MetroHealth Medical Center* (2002) Ohio 6803.
> To prevail on a defamation claim, whether libel or slander, a plaintiff must prove the following elements; (1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff. *Gosden v Louis* (1996), 116 Ohio App. 3d 195. In ruling on a motion for summary judgment in a defamation action, the court must apply the standard of clear and convincing evidence as to the element of fault. *Lansdowne v Beacon Journal Pub. Co.* (1987), 32 Ohio St. 3d 176. However, the standard of proof for all of the other elements of a private plaintiff's defamation claim is preponderance of the evidence. *Davis v. Jacobs* (1998), 126 Ohio App. 3d 580. A statement that a person was fired from his or her job would constitute slander per se because the statement tends to injure the person's professional reputation. *Knowles v Ohio State University* (2005) Ohio 3330.

(Id. at pg 3-4)

In this case, there are no issues of material fact to be litigated, all of the elements to prevail on a defamation claim have been met. The Defendant stated that "we have had multiple issues with the Abrahams and they physically tried to run my son and wife over, and we have charges filed against them…He [Joseph Abraham] assaulted our neighbors, has made threats at us." (Exhibit A.) This statement was made in front of a large number of people including the Plaintiffs and it was an untrue statement made about the Plaintiffs

6

accusing them of an indictable criminal offense involving moral turpitude. With defamation *per se*, damages and actual malice are presumed.

WILLFUL AND MALICIOUS INJURY

The basis of the non-dischargeability is found in 11 U.S.C. §523 (a)(6) which states that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) does not discharge an individual debtor from any debt-…(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;…

The facts show that the Defendant herein willfully and with malice intentionally caused Plaintiffs damages by slander and defamed one or both of the Plaintiffs. Falsely accusing the Plaintiffs of a crime is defamation per se, which presumes malice. This accusation, on its own, is actionable by the Plaintiffs as non-dischargeable. *U.S. v Ron Pair Enter.* 489 U.S. 235 (1989), states that is where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms.

Further, one could easily infer that the Defendant's motive was to discredit the Plaintiffs in his effort to obtain zoning approval to use his residence for a business enterprise by maligning the Abrahams' good names.

The Defendant's pretrial statement does not address the issues that are the subject of the Complaint. Instead he tells a story that has no relevance to the narrow issues of the Complaint. The primary issue is that the Defendant slandered and defamed the Plaintiffs at a public meeting, in front of a large group of Plaintiffs' neighbors which resulted in the Plaintiffs' damaged names and reputations. The Defendant's pretrial statement does not

7

focus on the issues of the Complaint but appears to attempt to add non-relevant information and cloud the issue.

To prevent discharge under 11 U.S.C. §523 (a)(6) for willful and malicious injury, the creditor must show that "(1) the debtor's conduct was willful *and* malicious, (2) the creditor suffered an injury to its legal rights, and (3) the creditor's loss was caused by the debtor's conduct. *In re Little,* 335 B.R. 376, 383 (Bankr. N.D. Ohio 2005). Defamation per se, presumes malice and damages, as stated above.

"While an intentional injury is typically both willful and malicious, they have distinct standards which must be met in order to qualify. The Sixth Circuit has held that a willful and malicious injury as defined under §523(a)(6) is one where the debtor 'desires to cause consequences of his act, or … believes that the consequences are substantially certain to result for it.'" *In re Moffitt,* 252 B.R. 916, 922 (6th Cir. 2000), citing *In re Markowitz,*, 190 F3d 455, 464 (6th Cir. 1999); *In re Best,* 109 Fed Appx. 1, 5 (6th Cir. 2004), citing *In re Kennedy,* 249 F.3d 576, 580 (6th Cir. 2001). Because the presumption of malice and damage is shown by the defamation per se, this criteria has been met.

Malicious injury, when not presumed, as in defamation per se, is "conduct taken in conscious disregard of one's duties or without just cause or excuse." *In re Little,* 335 B.R. 376, 383 (Bankr. N.D. Ohio 2005), citing *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir. 1986). The typical elements necessary for a malicious injury are: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Little, supra,* 384. However, defamation per se, meets this definition for malicious injury and presumes damages.

8

In this context, injury must be an invasion of the creditor's legal rights. In this section of the code it is defined in a technical sense and not merely as harm to a person. "Injuries within the meaning of §523(a)(6) are not confined to physical damage or destruction but also include an injury to intangible personal or property rights." *Id,* citing, *In re Ellis,* 152 B.R. 211, 215 (Bankr. E.D. Tenn. 1993).

Mr. and Mrs. Abraham are upstanding citizens. Mr. Abraham is retired from being a respiratory therapist working at a hospital for 30 years. Mrs. Abraham has been a registered nurse for over 30 years and has a successful home office business. They are former foster parents, and have resided in their home in Genoa Ohio for more than 10 years. The Abrahams' reputations, names and standing in the community have been maligned by the Plaintiff.

### FALSE LIGHT INVASION OF PRIVACY

False information set out by the Defendant placed the Plaintiffs in a false light before the public which was serious enough to be highly offensive to a reasonable person and was set out by Defendant with knowledge that it was false or with reckless disregard as to the falsity of the publicized matters and the false light into which the Plaintiffs would be placed.

### INTENTIONAL INFLICTION AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

When the defendant makes false and defamatory accusations of a crime, per se, it is not necessary to prove intent, damages are presumed and are to be determined after liability has been established. Generally, the "elements of intentional infliction of emotional distress are as follows: intentionally or recklessly causing severe emotional distress through extreme and outrageous conduct. *Yeager v Local Union 20* (1983), 6

9

Ohio St. 3d 369. The emotional distress must be severe unless it is accompanied by a contemporaneous physical injury. *Binns v Fredendall* (1978), 32 Ohio St. 3d 244." (*Fisher v. Marek*, Ottawa County Common Pleas Court Case No. 10CV340C Decision and Judgment Entry, Judge Kurfess, pg 4-5, Exhibit G.)

POLICE REPORT

The Police Report, Plaintiff's Exhibit E, Deputy John Carpenter indicates that Tina Palmer, wife of the Defendant, stated that "Mr. Abraham backed his van straight out of his driveway and forced Collin into the ditch." (Exhibit E, pg1.) Tina Palmer said that "Mr. Abraham then pulled back into his driveway and Collin came out of the ditch and drove home. Mrs. Palmer said that as she approached the Abraham driveway, Mr. Abraham backed out onto the road and blocked her from passing." (Exhibit E, pg 1.)

A friend of the Palmers, Joshua Bryer, made a statement to Deputy John Carpenter which is made part of the Police Report, Exhibit E. In his statement, Mr. Bryer is asked by Deputy Carpenter, "Q: Which way did he come out of his driveway? A: Front end in, backed out onto road." (Exhibit E-Joshua M. Bryer statement.)

Joseph Abraham, Sue Abraham, their daughter Amber Abraham, and Collin Abraham all agreed that Joseph Abraham had backed into his driveway somewhat askew and then pulled forward onto the street, straightening his angle to back into the driveway. Tina Palmer, Joshua Bryer and at the time, Collin Palmer stated that Joseph Abraham was backing out onto the street out of his driveway. This certainly brings the credibility and motive of the "victims" into question. In particular since Collin subsequently changed his story when under oath in court. (Exhibit F-Transcript of Ottawa County Court Case

10

No. 10CV581H, Hearing on Civil Protection Orders, Day 2 of 3, Testimony of Collin Palmer, pg 464-465.)

No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation * * *" Ohio Revised Code ("R.C.") § 2921.11(A). "A falsification is material, regardless of its admissibility in evidence, if it can affect the course or outcome of the proceeding." R.C. § 2921.11(B). "Where contradictory statements relating to the same material fact are made by the offender under oath or affirmation * * *, it is not necessary * * * to prove which statement was false, but only that one or the other was false." R.C. § 2921.11(D).

Collin Palmer accused Joseph Abraham of trying to hit him with his car but made two conflicting statements as to the direction of the car that Joseph Palmer was driving. First he said in the police report that "Mr. Abraham backed his van straight out of his driveway and forced [Collin] me into the ditch." (Exhibit E pg 1.) In Collin Palmer's testimony of 2011 he said, "[N]o he backed in like five, ten feet into his driveway, and he saw me and then he came back out." (Exhibit F pg. 464-465.) This is an "issue of material fact" that cannot prevent summary judgment from being granted on all claims against him. See, *Dahir Farah v. Stanley Chatman, et al.* (10th dist. 2007), 2007-Ohio-697 P16 ("appellees were entitled to judgment as a matter of law, and the trial court did not err by granting summary judgment based on appellant's admissions, notwithstanding his attempt to create a genuine issue of material fact by submitting affidavits contradicting those admissions.") To the extent there is any alleged "issue of material fact", it is not the product of a genuine factual dispute about the facts of the case. Rather, any alleged "issue of material fact" is disingenuous and solely the product of the

11

Defendant's desire to intentionally show the Plaintiffs in a false light, accusing them of not only the actions to which he had no personal knowledge, but also accusing them both, of assaulting their neighbors and threatening him.

CONCLUSION

Based upon the foregoing facts, Plaintiff Sue Abraham was never a part of the police report. She was accused of being involved in the incident described in the police report, where Defendant alleges that they physically tried to run my son and wife over, and we have charges filed against them…. This statement was at open Allen Township Zoning Board Public Hearing, attended by many people including neighbors.

Mrs. Abraham is entitled to an order granting her summary judgment as to Defendant's liability and non-dischargeability.

Mr. Abraham was accused of assaulting neighbors by the Defendant. However, the Defendant's testimony was that he said that he guessed it was a "verbal assault" and that he had never seen Mr. Abraham assault a neighbor. Mr. Abraham was wrongfully accused of the acts set forth in the police report for which conflicting statements have been made subsequently by the "victims" in the attached exhibits. The conflicting statements should be sufficiently suspicious to nullify the Defendant's claim of reliance on the police report.

WHEREFORE, Plaintiff Sue Abraham prays this Court grant summary judgment in her favor as to the Counts in the Complaint and determine that her claim is non-dischargeable pursuant to 11 U.S.C. §523 (a)(6). Plaintiff Joseph Abraham prays this Court grant summary judgment in his favor as to the Counts in the Complaint and determine that his claim is non-dischargeable pursuant to 11 U.S.C. §523 (a)(6).

14-03032-jpg    Doc 18    FILED 08/28/14    ENTERED 08/28/14 14:22:46    Page 12 of 13

Further, Plaintiffs pray this Court will set this matter for further hearing to determine damages for these intentional and malicious acts and for such other relief as this Court deems equitable.

Respectfully Submitted,

/s/ Deborah Spychalski
Deborah Spychalski (0061986)
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Motion for Summary Judgment was served on August 28, 2014 Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

- Patti Baumgartner-Novak    pnovak@buckeye-express.com, lisa-trt2@bex.net;OH76@ecfcbis.com
- Raymond L. Beebe    rlbagct@bex.net
- Thomas Gene French    lawofficeofthomasfrenchecf@gmail.com
- Daniel M McDermott    USTPRegion09.cl.ecf@usdoj.gov
- James L. Schuller    jschuller@schullerlaw.net
- Deborah K Spychalski    dk_spychalski@yahoo.com
- United States Trustee    (Registered address)@usdoj.gov
- Scott R. Belhorn ust35    Scott.R.Belhorn@usdoj.gov

And by regular US Mail to the following:

- Atlas Acquisitions LLC
  294 Union St.
  Hackensack, NJ 07601
  - 
Genoa Bank
801 Main Street
PO Box 98
Genoa, OH 43430

/s/ Deborah Spychalski
Deborah Spychalski, Attorney